LAURA E. DUFFY
United States Attorney
NEAMA RAHMANI
Assistant U.S. Attorney
California State Bar No. 2223819
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7848
Facsimile: (619) 557-5551

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA | ) | Case No. 11CR1655-H |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | **UNITED STATES'** **TRIAL MEMORANDUM** |
| LAURA ELENA TREJO-MACIAS, | ) ) | |
| aka LAURA TREJO-RODRIGUEZ, | ) ) | Date:     February 22, 2012 Time:     9:00 a.m. |
| aka LAURA TREJO DE ALATORRE, | ) ) | |
| Defendant. | ) ) ) | |

COMES NOW the plaintiff, United States of America, by and through
its counsel, Laura E. Duffy, United States Attorney, and Neama
Rahmani, Assistant United States Attorney, and respectfully submits
the following Trial Memorandum.

**I.**

**STATEMENT OF THE CASE**

    **A.   INDICTMENT**

On April 27, 2011, a federal grand jury in the Southern District
of California returned a one-count Indictment against Defendant Laura
Elena Trejo-Macias ("Defendant") charging her with Importation of
Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960.  On May 3,

2011, Defendant was arraigned on the Indictment and she entered a plea of not guilty.

**B.   TRIAL STATUS**

Trial is set for February 22, 2012.  The United States expects its case-in-chief to last approximately two days.

**C.   DEFENSE COUNSEL**

Defendant is represented by Marc B. Geller.

**D.   DEFENDANT'S CUSTODY STATUS**

Defendant stipulated to pre-trial detention and has been in custody since her arrest on March 9, 2011.

**E.   INTERPRETER**

The United States will need Spanish language interpreter assistance for witnesses David Ledezma and Cristhian Ledezma. Defendant may also request a Spanish language interpreter.

**F.   JURY WAIVER**

The parties have not waived trial by jury.

**G.   PRE-TRIAL MOTIONS**

On May 3, 2011, the United States filed a Motion for Reciprocal Discovery.  On May 4, 2011, Defendant filed Motions to Compel Discovery and for Leave to File Further Motions.  On May 10, 2011, the United States filed its Response to Defendant's Motions.

On August 15, 2011, the United States filed Motions in Limine to: preclude reference to punishment, education, health, age, and finances; exclude self-serving hearsay; admit TECS information; admit expert testimony by government witnesses; allow seized methamphetamine and radiator in the courtroom; preclude testimony of character witnesses; preclude evidence of duress or necessity; and preclude expert testimony by defense witnesses.

On January 25, 2012, Defendant filed Motions in Limine to: conduct a Daubert hearing concerning any expert witnesses; apply the rule of completeness; and admit third party culpability evidence. On January 27, 2012, Defendant filed a Motion in Limine to exclude evidence of the criminal activities of the previous owners of the vehicle. At the January 30, 2012 Motion and Status Hearing, the Court denied Defendant's Motion to conduct a Daubert hearing of Russell Butler, the Government's automotive expert. The Court will hear the remaining Motions in Limine on February 21, 2012.

### H. STIPULATIONS

The parties have entered into a stipulation regarding the methamphetamine in the case.

### I. DISCOVERY

The United States has complied and will continue to comply with its discovery obligations. Defendant has provided no reciprocal discovery. The United States has received notice that Defendant intends to call an unknowing courier expert witness.

## II.

### STATEMENT OF FACTS

### A. DEFENDANT'S ARREST

On March 9, 2011 at approximately 10:50 a.m., Defendant approached the primary inspection area at the San Ysidro, California Port of Entry. Defendant was the driver, sole occupant, and registered owner of a 2003 Chevrolet Tahoe with no license plates, but with a California Department of Motor Vehicles ("DMV") temporary operating permit. Customs and Border Protection ("CBP") Officer Stuart Hersey was conducting pre-primary roving operations and

screened the vehicle with his canine, which alerted to a narcotic odor emanating from the engine compartment area of the vehicle.

During the screening by Officer Hersey and his canine, Defendant read a newspaper and avoided eye contact with Officer Hersey. There were no keys attached to the ignition key and the vehicle had no personal belongings except for water bottles and a purse on the front passenger seat. Officer Hersey requested assistance from CBP Officer Christopher Navarro.

Officer Navarro contacted Defendant, who stated that she was going to San Ysidro, California. Officer Navarro asked Defendant to release the hood of the vehicle and Officer Navarro noticed that the bolts and screws attached to the radiator and cowling appeared to have been tampered with. Officer Navarro also noticed after-market rubber sheeting attached to both sides of the radiator.

While the vehicle engine compartment was being inspected, Defendant became increasingly nervous and anxious. Defendant's voice began trembling and her hands began shaking. Officer Navarro attempted to secure Defendant in handcuffs, but she initially resisted by pulling away from Officer Navarro. Officer Navarro overcame Defendant's resistance and secured her in handcuffs. Defendant was escorted to the security office and her vehicle was moved to the secondary inspection area.

At secondary inspection, CBP Officer Timothy Woodring completed the inspection of Defendant's vehicle. Officer Woodring lifted the vehicle's radiator and fan shroud/cowling and observed cellophane wrapped packages concealed in a non-factory compartment in the radiator. Ultimately, Officer Woodring discovered nine packages, wrapped in cellophane and packaging tape, concealed in the vehicle's

11CR1655-H

radiator.   The nine packages had an aggregate gross weight of 4.4 kilograms (9.68 pounds) and field tested positive for methamphetamine. Defendant was then placed under arrest.   Later, a forensic chemist with the Drug Enforcement Administration determined that the packages contained a net weight 4.01 kilograms (8.82 pounds) of methamphetamine actual.

**B.   DEFENDANT'S POST-ARREST STATEMENT**

On March 9, 2011, Homeland Security Investigations ("HSI") Agents Roger Carr and Alfonso Logan advised Defendant of her Miranda rights in Spanish.   Defendant confirmed that she understood her rights and agreed to answer questions without an attorney present.

Defendant denied knowledge of the drugs in her vehicle. Defendant stated that she had purchased the vehicle eight to nine days ago and that she had trouble registering it due to mechanical issues and DMV demands.   Defendant stated that she purchased the vehicle through an advertisement in the Tijuana Auto Trader from a seller named "Fernando" for $6,300.00 cash.   Defendant stated that she took the vehicle to a mechanic in Otay Mesa named "Patches" to check the vehicle.   Defendant also stated that she loaned the vehicle to three of her employees periodically.

**C.   DEFENDANT'S IMMIGRATION AND CRIMINAL HISTORY**

Defendant is a Mexican citizen who was granted Legal Permanent Resident status in the United States.   She has no known criminal history in the United States.

//
//
//
//

5                                 11CR1655-H

**III.**

**WITNESSES**

The United States reserves the right to change the order of potential witnesses, substitute witnesses, add, or omit one or more witnesses.

    1.   Stuart Hersey, Customs and Border Protection

    2.   Christopher Navarro, Customs and Border Protection

    3.   Timothy Woodring, Customs and Border Protection

    4.   Alfonso Logan, Homeland Security Investigations

    5.   Andrew Flood, Homeland Security Investigations

    6.   Russell Butler

    7.   David Ledezma

    8.   Cristhian Ledezma

**IV.**

**EXHIBITS**

The United States will provide a complete exhibit list prior to trial. The United States requests that Defendant examine United States' exhibits before trial to expedite proceedings. The United States further requests an opportunity to examine Defendant's exhibits before trial. The United States intends to offer into evidence the following, and may amend this list prior to trial:

    1.   Photographs of San Ysidro, California Port of Entry

    2.   Photographs of Defendant's vehicle

    3.   Photographs of seized methamphetamine

    4.   Defendant's vehicle radiator

    5.   TECS records for Defendant and Defendant's vehicles

    6.   Drug value chart

7.    Video recording and transcript of Defendant's post-arrest
      interview (and translation)

**V.**

**LEGAL ISSUES**

**A.    ELEMENTS OF THE OFFENSE: 21 U.S.C. §§ 952 AND 960,
       IMPORTATION OF A CONTROLLED SUBSTANCE**

The United States must prove beyond a reasonable doubt that:

1.    Defendant knowingly brought methamphetamine into the
      United States from a place outside the United States;
      and

2.    Defendant knew that the substance he was bringing into
      the United States was methamphetamine or some other
      prohibited drug.

9th Cir. Crim. Jury Instr. 9.32 (2010). It does not matter whether Defendant knew that the substance was methamphetamine. It is sufficient that Defendant knew that it was some kind of prohibited drug. Id.

Possession may be actual or constructive, and it may be proved by direct or circumstantial evidence. See United States v. Magallon-Jimenez, 219 F.3d 1109, 1112-1113 (9th Cir. 2000). Moreover, Defendant's mere possession of a substantial quantity of a controlled substance may show that Defendant knowingly possessed the substance. See United States v. Diaz Cardenas, 351 F.3d 404, 407 (9th Cir. 2003) (holding that jury could infer knowledge when an individual is the driver and sole occupant of a vehicle containing 4.31 kilograms of methamphetamine and 8.02 kilograms of cocaine concealed in the air bag of the vehicle); United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir. 1989) (finding 2.5 kilograms of cocaine sufficient to show knowledge and intent to distribute and noting that a secret

1  compartment within a vehicle used to conceal illegal substances can
2  raise an inference concerning knowledge of the substance).

3      Knowledge may also be proved by reasonable inferences from the
4  high street value of the narcotics.  See <u>United States v. Ogbuehi</u>,
5  18 F.3d 807, 812 (9th Cir. 1994) ("DEA agents can testify as to the
6  street value of narcotics, . . . and counsel can argue reasonable
7  inferences from it.") (citation omitted); <u>United States v. Golden</u>,
8  532 F.2d 1244, 1247 (9th Cir. 1976) (holding that "value of the heroin
9  found in the bags was relevant to both appellants' knowledge of the
10 presence of the heroin and intent to distribute"); <u>Gaylor v. United</u>
11 <u>States</u>, 426 F.2d 233, 235 (9th Cir. 1970) (testimony as to the selling
12 price of cocaine was relevant to issue of knowledge, since it tended
13 to refute "the possibility that a stranger could have placed such a
14 valuable cargo in a vehicle in the hope that the vehicle could be
15 followed and the cocaine later recovered in the United States").

16     **B.    Expert Testimony**

17     The Government intends to present the testimony of three expert
18 witnesses at trial.  The United States has provided Defendant with
19 notice and qualifications with regard to each of these experts, and
20 respectfully refers the Court to its Motions <u>in</u> <u>Limine</u> for further
21 discussion regarding expert testimony at trial.

22          1.   <u>Value Expert</u>

23     The Government intends to call as a witness HSI Special Agent
24 Andrew Flood to testify as to the wholesale and retail values of the
25 methamphetamine seized in this case.  Agent Flood will base his
26 opinions on his experience investigating these types of cases, as well
27 as his hands-on experience interrogating smugglers, debriefing
28

1  confidential informants, and discussing intelligence information with

2  other agents.

3                  2.   Automotive Expert

4       The United States will also elicit automotive expert testimony

5  from Russell Butler regarding the compartment in the radiator of

6  Defendant's vehicle and its effect on the operation of the vehicle.

7  Mr. Butler will base his opinions and testimony on his more than 35

8  years of experience as an automobile mechanic, his examination of

9  Defendant's vehicle, as well as his prior experience with this and

10 other vehicles.

11                              **VI.**

12                            **VOIR DIRE**

13      The United States requests that the following voir dire questions

14 be addressed to the jury panel in addition to the Court's standard

15 jury questions:

16      1.   This case involves the smuggling of methamphetamine into
           the United States.  Does anyone have strong feelings about
17         the laws of the United States relating to drugs?  Does
           anyone believe that methamphetamine should be legalized?
18         Would your views prevent you from being fair and impartial
           in this case?
19
20      2.   Has any juror or a family member or close friend ever been
           arrested or the subject of an investigation by law
           enforcement?  Would that experience prevent you from being
21         fair and impartial?

22      3.   The Government will call employees from Immigration and
           Customs Enforcement, Customs and Border Protection, and
23         the Drug Enforcement Administration  as witnesses.  Does
           anyone have any experience with, or knowledge of, these
24         agencies?  If so, would that prevent you from being fair
           and impartial?
25
26      4.   Has anyone had an unpleasant or negative experience with
           any law enforcement personnel?  Would that cause you to
           be biased against law enforcement?
27

28

5.   Has anyone had any disputes with an agency of the United States Government?  If so, please describe.

6.   Has anyone been a member of an organization involved in advocating for legalization of drugs?  If so, please explain.

7.   Does anyone feel the United States is perhaps overly zealous in what is sometimes referred to as the  "war against drugs?" If so, please explain.

8.   Have you or any relatives or close friends ever been accused of, or charged with, a crime?  If so, please explain.

9.   Has anyone had any training in the law?  If so, please explain.

10.   Does anyone require that they have an audiotape or videotape of an event in order to believe that an event took place? Would they be willing to accept testimony of witnesses present at the event instead of an audio or videotape if they believed the witnesses?

11.   Do you understand that you cannot consider any feelings of sympathy or pity you may have for the Defendant when deciding the facts of this case?

12.   Does anyone feel that due to philosophical, moral, religious or other reasons, that they would have difficulty finding the defendant guilty even if the Government had proven its case beyond a reasonable doubt?

//

//

//

//

//

//

//

//

//

//

//

11CR1655-H

# VII.

## **JURY INSTRUCTIONS**

The United States will file its proposed instructions under separate cover.  The United States anticipates that the majority of its proposed instructions will be taken from the Committee on Model Criminal Jury Instructions - Ninth Circuit, Manual of Model Jury Instructions for the Ninth Circuit (2010).

DATED: February 17, 2012

Respectfully submitted,

LAURA E. DUFFY
United States Attorney

s/ Neama Rahmani
NEAMA RAHMANI
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 11CR1655-H |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| LAURA ELENA TREJO-MACIAS, | ) | |
| aka LAURA TREJO-RODRIGUEZ, | ) | |
| aka LAURA TREJO DE ALATORRE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Neama Rahmani, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **United States' Trial Memorandum**, together with statement of facts and memorandum of points and authorities, on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1.   Marc B. Geller, Esq.

Counsel for Defendant Laura Elena Trejo-Macias

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 17, 2012.

s/ Neama Rahmani
NEAMA RAHMANI